UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONNELL GARDNER and MICHAEL
LOCKE,

        Plaintiffs,

        v.

ILLINOIS DEPARTMENT OF
CORRECTIONS, RICHARD
HARRINGTON, BRAD THOMAS, R. D.
MOORE, and GARY CONNORS,

        Defendants.

Case No. 07-cv-00785-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 12). Plaintiffs timely responded. (Doc. 15). The time for further filing has passed. For the following reasons, the Court GRANTS in part and DENIES in part the Motion to Dismiss.

### BACKGROUND

For purposes of this motion, the Court accepts as true the following facts. Plaintiffs Michael Locke (Locke) and Donnell Gardner (Gardner) are both African-American men who were employed as Corrections Officers (COs) by Defendant Illinois Department of Corrections ("IDOC"). Both worked at Menard Correctional Center (Menard) in Chester, Illinois. Locke began working for IDOC in 1997; Gardner began working for IDOC in 1998. Inmates at Menard and other correctional centers will often make allegations that COs are engaged in misconduct. Such allegations, when made against Caucasian COs, do not result in disciplinary actions or the termination of the accused CO's employment.

An inmate at Menard made false allegations that Locke was distributing contraband to

the inmates. On February 15, 2005, based on those allegations, Locke's superiors directed him to turn in his keys and meet with Defendant Richard Harrington, an investigator for the Central Intelligence Department of IDOC. Locke was then taken to the Chester Police Department, where he was arrested and charged with attempting to bring contraband into the penal institution and conspiracy to distribute illegal substances. The Randolph County State's attorney subsequently amended the charges to unauthorized possession and delivery of cannabis. Locke was ultimately acquitted of the charges. Nevertheless, IDOC terminated Locke's employment on or about January 6, 2006, ostensibly because Locke had attempted to smuggle contraband into Menard and because he had prior reprimands on his record. However, Locke had not, in fact, attempted to smuggle contraband into Menard and did not have any prior reprimands in his record. IDOC knew that at the time it terminated his employment. On February 28, 2006, Locke filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). Locke received his Notice of Right to Sue letter on October 19, 2007. He filed this action of November 6, 2007, alleging that IDOC terminated him because of his race, in violation of Title VII.

An inmate at Menard made false allegations that Gardner was distributing contraband to the inmates. On September 27, 2005, Gardner parked his vehicle across the street from the Menard Correctional facility prior to beginning his shift. Defendant Harrington, Defendant Brad Thomas (also an investigator with the Central Intelligence Department of IDOC), Defendant R. D. Moore (a Major with IDOC), and Defendant Gary Connors (Assistant Warden at Menard), demanded permission to search Gardner's vehicle. Harrington, Thomas, Moore and Connors based their demand on the inmate's allegations. Gardner refused to allow them to search his vehicle. Harrington, Thomas, Moore and Connors held Gardner's vehicle until they obtained a

2

search warrant. The search did not uncover contraband. However, a firearm was found in the vehicle. As a correctional officer, Gardner was authorized to carry and transport a weapon to work. Nonetheless, Harrington, Thomas, Moore and Connors had Gardner arrested and charged with unlawful use of a weapon. The Randolph County State's Attorney later dismissed the charges. Despite the dismissal of the charges against him, IDOC suspended Gardner without pay for approximately three months. On March 2, 2006, Gardner filed a charge of discrimination with the Illinois Department of Human Rights and with the EEOC. He received his Notice of Right to Sue on August 9, 2007. Gardner filed this action on November 6, 2007, alleging that IDOC suspended him because of his race, in violation of Title VII, and that Harrington, Thomas, Moore, and Connors violated his Fourth Amendment rights when they had him falsely arrested.

**ANALYSIS**

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam ) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007)(quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted).

The complaint must offer "more than labels and conclusions, and a formulaic recitation

3

of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. Moreover, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Services Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n. 8.

I.  **Count I - Locke's Title VII Claim**

Defendants argue the Court should dismiss part of Count I, Locke's Title VII disparate treatment claim, as time barred. 42 U.S.C. § 2000e-5(e)(1) provides that a person in Illinois has three hundred days to file a complaint with the EEOC after the date of the alleged unlawful employment practice. Discrete discriminatory acts, such as termination of employment, are not actionable if a complaint is not filed with the EEOC within the statutory period. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.
> *Morgan*, 536 U.S. at 113.

Locke alleges that IDOC terminated him because of his race on January 6, 2006. He filed his complaint with the EEOC February 28, 2006, within the 300 day time frame. While the events of February 15, 2005, are outside of the 300 day window, Locke may use those events as background evidence in support of his timely claim. Locke's Title VII claim is not time barred merely because IDOC's termination of his employment is related to its conduct in having him arrested.

4

## II.     Count II - Gardner's Title VII Claim

Defendants contend that Count II should be dismissed because Gardner is time barred from bringing suit. Title VII provides that the EEOC shall notify the complainant of his right to sue, "and within ninety days after the giving of such notice, a civil action may be brought." 42 U.S.C. § 2000e-5(f)(1). The ninety days only begins to run upon actual receipt of the notice by the plaintiff or the plaintiff's attorney. *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005). Gardner's complaint alleges that he received his right-to-sue letter on August 9, 2007. He filed this case within ninety days, on November 6, 2007. Therefore, the Court will not dismiss Count II as untimely.[1]

## III.    Counts III through VI - Gardner's § 1983 claims

Defendants next argue that Gardner is time barred from bringing Counts III through VI. Counts III through VI are § 1983 claims against Defendants Harrington, Thomas, Moore, and Connors in which Gardner seeks damages for false arrest. Because § 1983 claims do not have an independent statute of limitations, the Court borrows Illinois's two-year statute of limitations for personal injury torts. *Wallace v. Kato*, –U.S. –, 127 S.Ct. 1091, 1094-95 (2007). The parties agree that the applicable statute of limitations is two years, but they disagree over when the statute of limitations begins to run. Defendants contend that the two years began on the date Gardner was arrested, September 27, 2005. Gardner asserts that the two years did not begin until the charges against him were dismissed, December 27, 2005.

The Supreme Court's holding in *Kato* is directly on point. A plaintiff is entitled to file

---

[1] The Court notes that in his Response to Defendants's Motion to Dismiss, Gardner has submitted evidence confirming the date he actually received his right-to-sue letter. For purposes of this Motion, such evidence was not properly before the Court, and the Court did not consider it.

suit for false arrest immediately upon arrest, as that is when the injury occurs. *Id*. at n.3. However, the statute of limitations does not begin to run until the plaintiff is no longer detained without legal process, "for example, [when] he is bound over by a magistrate or arraigned on charges." *Id*. at 1096. Therefore, the statute of limitations on Gardner's § 1983 claims began when he was bound over or arraigned.

However, Gardner relies on *Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004), for the contention that the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), "requires that Plaintiff Gardner's Fourth Amendment claim would not begin to accrue until the charges were dismissed." In *Heck* the plaintiff brought a § 1983 claim for allegedly unconstitutional conviction or imprisonment. Analogizing such a suit to malicious prosecution, the Supreme Court held that the claim itself could not arise until the conviction or imprisonment were invalidated. *Id*. at 486. Therefore, the statute of limitations on such a claim could not have begun either. *Id*. at 489. Until such time as the conviction is invalidated, a civil suit impugning the conviction must be dismissed as an improper collateral attack. *Id*. at 487. Once the conviction is invalidated, suit can be brought on the cause of action and the statute of limitations on the cause of action begins to run. *Id*. at 487-90.

In *Wiley*, the plaintiff brought - not a malicious prosecution claim - but a wrongful arrest claim, based on allegations that the police had planted evidence on him. *Wiley*, 361 F.3d 994. The Seventh Circuit reasoned that if the planted evidence were the only evidence used at trial, then a collateral attack on the evidence in the wrongful arrest suit would necessarily impugn the validity of a conviction based on that evidence. *Id*. at 997. Therefore, *Heck* would require dismissal of a § 1983 wrongful arrest claim impugning such conviction until after the conviction was overturned. However, the plaintiff had not been convicted; the charges were dismissed.

6

The court concluded that the deferred accrual rule in *Heck* should be expanded from extant convictions to potential convictions. "If [a plaintiff's] attack on his arrest would challenge the only evidence supporting a potential conviction, then his claim did not begin to accrue until the charges were dismissed. . . ." *Wiley*, 361 F.3d at 997-98.

However, the Supreme Court explicitly rejected this "bizarre extension of *Heck*." *Kato*, 127 S.Ct. at 1098. "[T]he *Heck* rule for deferred accrual is called into play only when there exists an outstanding criminal judgment." *Id*. at 1097-98. It simply does not apply when there is no criminal conviction that the civil action would impugn. *Id*. at 1098.[2] "We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id*. at 1100. Therefore, the statute of limitations on Gardner's wrongful arrest cause of action began to run once he was bound over by a magistrate or arraigned on charges. *Id*. at 1097.

Gardner was arrested on September 25, 2005. The Complaint does not give a date for the arraignment. However, in order for Gardner's § 1983 claims to be timely, his arraignment would have had to have been delayed until after November 6, 2005. Although the Court must draw all reasonable inferences in Gardner's favor, the mere silence of the Complaint as to the date of the arraignment cannot support an inference that Gardner was held for 41 days without being arraigned. Therefore, it is clear from the Complaint that Plaintiff is time barred from bringing Counts III through VI against Defendants Harrington, Thomas, Moore, and Connors.

---

[2]The Supreme Court left open the question of whether an intervening criminal conviction would toll the running of the statute of limitations for a wrongful arrest action commenced prior to conviction. *Kato*, 127 S.Ct. at 1098-99. The Court does not reach this question here.

Accordingly, the Court grants Defendants Motion to Dismiss for Counts III, VI, V, and VI.

## CONCLUSION

For the foregoing reasons, the **Court GRANTS in part and DENIES in part** the Motion to Dismiss (Doc. 12). The Court **DENIES** Defendants's Motion to Dismiss as to the claims against Defendant IDOC. The Court **GRANTS** Defendants's Motion to Dismiss as to the claims against Defendants Richard Harrington, Brad Thomas, R. D. Moore and Gary Connors. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: August 5, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**